1

2

3

4

5

6

7

8                     IN THE UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10   WILLIAM SYLVESTER,

11            Plaintiff,                    No.  2:10-cv-2380 KJN[1] P

12       vs.

13   ED ALAMEIDO, et al.,

14            Defendants.                   <u>ORDER</u>

15   _____/

16            Plaintiff is a state prisoner, incarcerated at California State Prison-Sacramento

17   ("CSP-SAC"), under the authority of the California Department of Corrections and

18   Rehabilitation ("CDCR"), who proceeds in forma pauperis and without counsel in this civil

19   rights action filed pursuant to 42 U.S.C. § 1983.  This action proceeds on plaintiff's original

20   complaint, filed on September 3, 2010 (Dkt. No. 1), wherein plaintiff alleges deliberate

21   indifference to his serious medical needs by: Physicians J. Wedell and V. Duc; and by medical

22   administrators A. Deems, CSP-SAC Chief Executive Officer; T. Kimura-Yip, Deputy Director,

23   CDCR Prison Health Care Services; and Sahota, CSP-SAC Chief Physician and Surgeon.

24   Plaintiff also alleges a state law medical negligence claim.  Following service of process of the

25   _____

26        [1]  Pursuant to the consent of the parties, this action proceeds before the undersigned
     magistrate judge for all purposes.  28 U.S.C. § 636(c); Local Rule 305(a).  (See Dkt. No. 40.)

1  complaint by the U.S. Marshal, defendants answered the complaint on August 9, 2011.  (Dkt. No.

2  18.)

3          Presently pending for decision is defendants' motion for summary judgment.

4  (Dkt. No. 27.)  Plaintiff filed an opposition with supporting exhibits (Dkt. Nos. 41-45);[2] and

5  defendants filed a reply (Dkt. No. 47).  For the reasons that follow, the court grants defendants'

6  motion for summary judgment on plaintiff's federal claims, and dismisses without prejudice

7  plaintiff's state law claim.

8  I.  Legal Standards for Summary Judgment

9          Summary judgment, in whole or in part (summary adjudication of issues), is

10  appropriate when it is demonstrated that the standard set forth in Federal Rule of Civil Procedure

11  56(c) is met.  "The judgment sought should be rendered  if . . . there is no genuine issue as to any

12  material fact, and . . . the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

13  56(c).

14          Under summary judgment practice, the moving party always bears
            the initial responsibility of informing the district court of the basis

15          for its motion, and identifying those portions of "the pleadings,
            depositions, answers to interrogatories, and admissions on file,

16          together with the affidavits, if any," which it believes demonstrate
            the absence of a genuine issue of material fact.

17

18  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986), quoting Federal Rule of Civil Procedure

19  56(c).  "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue,

20  a summary judgment motion may properly be made in reliance solely on the 'pleadings,

21  depositions, answers to interrogatories, and admissions on file.'"  Id.  Summary judgment should

22  be entered, after adequate time for discovery and upon motion, against a party who fails to make

23

24          [2]  As required by the Ninth Circuit, defendants adequately informed plaintiff,
    contemporaneously with serving their motion for summary judgment, of the requirements for

25  opposing defendants' motion for summary judgment.  See Woods v. Carey, 684 F.3d 934 (9th
    Cir. 2012);  Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc).  (See Dkt. No. 27 at

26  1-4.)

a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually exists. See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of a factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that a dispute exists. See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the disputed fact is material, i.e., a fact that might affect the outcome of the suit under governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Anderson, 477 U.S. at 248; T.W. Elec. Serv., 809 F.2d at 631.

In the endeavor to establish the existence of such a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 630. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e), Advisory Committee's note on 1963 amendments).

////

1    In resolving a summary judgment motion, the court examines the pleadings,

2 depositions, answers to interrogatories, and admissions on file, together with any affidavits.  Fed.

3 R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  <u>Anderson</u>, 477 U.S. at

4 255.  All reasonable inferences that may be drawn from the facts placed before the court must be

5 drawn in favor of the opposing party.  <u>Matsushita</u>, 475 U.S. at 587.  Nevertheless, inferences are

6 not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate

7 from which the inference may reasonably be drawn.  <u>Richards v. Nielsen Freight Lines</u>, 602 F.

8 Supp. 1224, 1244-45 (E.D. Cal. 1985), <u>aff'd</u>, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to

9 demonstrate a genuine issue, the opposing party "must do more than simply show that there is

10 some metaphysical doubt as to the material facts . . . .Where the record taken as a whole could

11 not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for

12 trial.'"  <u>Matsushita</u>, 475 U.S. at 586 (citation omitted).

13 II.  <u>Evidentiary Objections</u>

14     A.  <u>Defendants' Objections</u>

15         Defendants make the following objections to evidence submitted by plaintiff in

16 support of his opposition to defendants' motion for summary judgment.

17         1.  <u>Plaintiff's Declaration</u>

18         Defendants object to the introduction of plaintiff's declaration, which defendants

19 assert contains "sham" statements that are "supported solely by [plaintiff's] own self-serving

20 testimony, unsupported by corroborating evidence, and undermined by his own deposition

21 testimony."  (Dkt. No. 46-3 at 1.)[3]  Defendants cite case law authorizing a court to disregard a

22 "sham" affidavit intended to create an issue of fact by contradicting the attesting party's prior

23 deposition testimony.  (Id. at 1-2.)  <u>See Kennedy v. Allied Mut. Ins. Co.</u>, 952 F.2d 262, 266 (9th

24 Cir. 1991) ("'[I]f a party who has been examined at length on deposition could raise an issue of

25 _____

26      [3]  Citations to the record reflect the court's electronic pagination, not the internal pagination of the cited documents.

4

1  fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly

2  diminish the utility of summary judgment as a procedure for screening out sham issues of fact.'"

3  (quoting Foster v. Arcata Assocs., Inc., 772 F.2d 1453, 1462 (9th Cir. 1985).)

4          Defendants' objections are largely overruled.  The court relies on plaintiff's

5  declaration statements to the extent that they are supported by plaintiff's sworn deposition

6  testimony or other record evidence; to the limited extent plaintiff's statements appear to be

7  unsupported, the court so indicates and does not rely on those isolated portions of plaintiff's

8  declaration.  Overall, plaintiff's declaration appears to reflect a sincere effort to rely on the

9  evidence of record.

10         2.  Declarations of Other Prisoners

11         Defendants object to plaintiff's submission of declarations by two other prisoners,

12  Jose Espinoza and Lance Clemens, who each aver that defendant Dr. Wedell was deliberately

13  indifferent to their respective medical needs.  (See Dkt. No. 46-3 (defendants' objections); Dkt.

14  No. 42 at 52-82 (subject declarations and related exhibits).)

15         Defendants' objections are sustained.  The declarations of plaintiff's fellow

16  inmates regarding the medical services they each received from defendant Wedell are not

17  relevant in ascertaining the quality of care that Dr. Wedell provided to plaintiff.  See Fed. R.

18  Evid. 401.  Thus, the declarations of Jose Espinoza and Lance Clemens have not been relied

19  upon in addressing the merits of the instant motion.

20         3.  Declaration of Prison Law Office Staff Attorney Kelly Knapp

21         Defendants object to plaintiff's submission of the January 5, 2012 declaration of

22  Kelly Knapp, Staff Attorney to the California Prison Law Office.  Defendants contend that the

23  declaration is incomplete and does not contain the referenced attachments.

24         Defendants' objections are largely inaccurate, and overruled.  Under penalty of

25  perjury, plaintiff identifies the noted exhibit as "a true and correct copy of the declaration of

26  Attorney Kelly Knapp, employed by the Prison Law Office dated January 5, 2012."  (Dkt. No. 42

at 12, ¶ 5.)  The subject declaration, signed by Mr. Knapp under penalty of perjury, is responsive

to an inquiry from plaintiff relative to the role the Prison Law Office could take in advocating

plaintiff's interests, and includes the following exhibits referenced therein:  a copy of the

operative Plata stipulation for injunctive relief (Plata v. Davis, Case No. C-01-1351 THE (N. D.

Cal.), Order filed June 13, 2002 (Exhibit 1)); and a copy of the Prison Law Office's May 27,

2010 letter to plaintiff (Exhibit 2), prepared by Tinbete Ermyas, "Litigation Assistant under Kelly

Knapp."  (See Dkt. No. 42 at 86-108.)  While Exhibit 2 notes enclosures of "HCM, Medical

Records," referenced in the letter as "the medical records relied upon in this letter" (id. at 107,

108), which are not included with plaintiff's declaration, plaintiff attached his medical records to

the complaint.  Additionally, plaintiff's subject correspondence with the Prison Law Office is

supported by plaintiff's deposition testimony.  (See e.g. Pltf. Depo. at 58-62.)

For these reasons, the court finds no basis for doubting the veracity of Mr.

Knapp's declaration, the exhibits attached thereto, and plaintiff's reliance thereon.

4.  Plaintiff's Exhibit C (Envelope addressed to "Government Claim Program")

Defendants object to plaintiff's "Exhibit C," submitted as an attachment to

plaintiff's supplemental statement of disputed facts.  (Dkt. No. 44 at 4.)  The envelope is

addressed to the "Government Claims Program," bears plaintiff's return address, and bears a

postmark of June 17, 2010.  Defendants assert that "[t]his document is unauthenticated and is

presented to demonstrate that Sylvester presented his claim to the 'Government Claim Program'

yet the document is only an addressed envelope without any further identifying information

regarding a claim number or a copy of the enclosed document."  (Dkt. No. 46-3 at 2.)

Defendants fail to note that this court previously addressed the matters underlying

this exhibit, pursuant to plaintiff's April 25, 2012 filing.  (See Dkt. Nos. 38, 47.)  By order filed

May 14, 2012, the undersigned acknowledged plaintiff's submission of exhibits that appeared to

demonstrate that plaintiff, on June 11, 2010, submitted to prison officials for mailing a claim to

the California Victim Compensation and Government Claims Board ("VCGCB"), against, inter

1  alia, defendants Wedell, Duc, Deems, and Kimura-Yip for medical negligence, as alleged in this

2  action.  However, due to systemic problems in the CSP-SAC mailroom, identified nearly two

3  years later in a April 11, 2012 letter to plaintiff from CSP-SAC Warden Virga, plaintiff's tort

4  claim was not mailed to the VCGCB until April 2012.  Acknowledging this significant delay, the

5  court directed CSP-SAC staff to assist plaintiff in forwarding a copy of the court's order

6  concerning these matters to the VCGCB, with a request that the Board, if possible, expedite

7  consideration of plaintiff's claim.  (See Dkt. No. 47.)

8          It is reasonable to infer that the contested exhibit, which bears a date stamp of

9  June 17, 2010,[4] was so stamped by CSP-SAC mailroom staff upon receipt of the envelope and its

10  contents, but that the timely-stamped letter remained in the mailroom until April 2012.  The

11  potential legal implications of these facts are addressed below.  The court finds these matters,

12  including plaintiff's "Exhibit C," sufficiently established and authenticated for purposes of the

13  instant motion.  Therefore, defendants' objections are overruled.

14      B. Plaintiff's Objections

15          Plaintiff makes several objections to the content of defendants' discovery

16  responses, necessarily relied upon in part by plaintiff in opposing defendants' motion.  Although

17  the undersigned previously rejected plaintiff's prior untimely challenge to defendants' discovery

18  responses (see Dkt. No. 30, filed March 27, 2012), the court then stated (id. at 4):

> Plaintiff must rely on the discovery he has received to date to
> support his opposition to defendants' motion for summary
> judgment.  Plaintiff may, if directly relevant to a factual issue
> presented in this action, direct the court to a specific discovery
> response by a specific defendant that plaintiff alleges is evasive or
> incomplete.  In this way, the court will be able to assess the
> adequacy of defendants' discovery responses while considering the
> merits of their summary judgment motion.

---

25  [4]  The court previously found the date stamp illegible.  (See Dkt. No. 47 at 1.)  The undersigned has now reviewed the date stamp under magnification, and finds that it indeed provides "JUN 17 2010."

1          The court's review of defendants' discovery responses, in response to plaintiff's

2    current challenges (see e.g. Dkt. No. 42 at ¶¶ 11, 14, 18), demonstrates that defendants Duc and

3    Wedell provided plaintiff with virtually no substantive information.  Defendants routinely

4    responded to interrogatories and requests for admissions with objections and a statement that

5    they had "no independent recollection of plaintiff's care at this time;" further, it appears that

6    defendants failed to produce any documents, based on their objections to the framing of

7    plaintiff's requests.  (See generally, Dkt. No. 42 at 109-141 (Exh. 5 to Pltf. Decl.))

8          The undersigned is compelled to remind defendants' counsel that federal civil

9    discovery is intended to serve a "vital role" in "narrow[ing] and clarify[ing] the basic issues

10   between the parties, and . . . ascertaining the facts, or information as to the existence or

11   whereabouts of facts, relative to those issues. . . . [in order] for the parties to obtain the fullest

12   possible knowledge of the issues and facts before trial."  Hickman v. Taylor, 329 U.S. 495, 501

13   (1947).  These goals are particularly important in a prisoner civil rights actions, due to plaintiff's

14   limited ability to otherwise obtain relevant evidence.  While the court finds that the limited

15   content in defendants' discovery responses does not impact the analysis in the present case,

16   counsel is admonished to be more forthcoming in future litigation.

17        C.  Plaintiff's Request for Judicial Notice

18        Plaintiff requests that this court take judicial notice of a copy of the operative

19   Plata stipulation for injunctive relief, Plata v. Davis, Case No. C-01-1351 THE (N. D. Cal.),

20   Order filed June 13, 2002.  (Dkt. No. 45.)  The request is granted.  See e.g. Valerio v. Boise

21   Cascade Corp., 80 F.R.D. 626, 635 n.1 (N.D. Cal. 1978), aff'd, 645 F.2d 699 (9th Cir.), cert.

22   denied, 454 U.S. 1126 (1981) (judicial notice may be taken of court records).

23        However, plaintiff is informed that, while Plata is a class action of inmates in

24   California state prisons with serious medical needs, the terms of the stipulation are not directly

25   applicable to prisoner suits for individual injunctive medical relief and associated damages.

26   Rather, the weight of opinion by courts considering the matter holds that individual claims that

8

do not seek relief on behalf of all other CDCR inmates, but rather relief that is specific to plaintiff, are to be analyzed independently. See e.g. In Burnett v. Dugan, 618 F .Supp. 2d 1232 (S.D. Cal. 2009); accord, Moore v. McDonald, 2011 WL 3684608, *3 (E.D. Cal. 2011) (but noting divergence of opinion among unpublished district court decisions); Jaspar v. Khoury, 2011 WL 2457904, *3 (E.D. Cal. 2011) (same); Jaspar v. Khoury, 2011 WL 5118535, *3 (E.D. Cal. 2011) (same); Watson v. Sisto, 2011 WL 533716, *6 (E.D. Cal. 2011) (same).

II.  Undisputed and Disputed Facts

The following summary sets forth the relevant facts that are undisputed by the parties or, following the court's review of the evidence, have been deemed undisputed for purposes of the pending motion.  Pertinent disputed facts are also noted.

1.  Plaintiff was born on May 7, 1968, and is now 44 years of age.

2.  Plaintiff has been an inmate at CSP-SAC since January 2009, when he was transferred from California State Prison-Corcoran ("CSP-COR").

3.  Plaintiff has been treated for arthritic pain in his knees and left hip since 2004, when he began taking Naproxen, an anti-inflammatory and pain medication.  Plaintiff's dosage has not changed since 2004 -- he takes 500 milligrams twice a day, for a daily total of 1000 milligrams.

4.  Plaintiff's workout routine, while incarcerated at CSP-COR, included push-ups, squats, and the military exercise "burpees," in which plaintiff would repetitively squat, kick his feet back, do a push-up, jump his feet back to his hands, and rise up.

5.  In the latter part of 2008, while incarcerated at CSP-COR, plaintiff first experienced pain and swelling in his left elbow, and an inability to straighten his left arm.  Plaintiff avers that he sustained no known precipitating injury.  (Pltf. Depo. at 16-17; Pltf. Decl. ¶ 7.)

6.  Shortly thereafter, plaintiff was seen by an unidentified doctor at CSP-COR who examined plaintiff's elbow, opined that the problem was "most likely tendonitis" attributable to overuse or repetitive motion, and recommended that plaintiff rest his arm.

9

(Pltf. Depo. at 19, 22; Pltf. Decl. ¶ 8.)  Plaintiff avers that this doctor only "visually inspected the elbow, did not test the elbow's range of motion and did not move it.  The doctor simply felt it for swelling. . . . Plaintiff was not given a brace, no x-rays were taken and he was not given any pain medication."  (Pltf. Decl. ¶ 8.)

7.  Plaintiff was advised by his primary care physician at CSP-COR to cut his workout routine in half, advice with which plaintiff complied.  (Pltf. Decl. ¶ 9.)

8.  After his transfer to CSP-SAC in January 2009, plaintiff continued to exercise four times a week, but "followed his doctor's 2008 recommendations by resting his arm and cutting his work-out routine in half."  (Pltf. Decl. ¶ 10; Pltf. Depo. at 25.)  Plaintiff added pull-ups and dips to his workout routine, but discontinued burpees because he was able to run instead.  Plaintiff states that "[b]y June 2009, plaintiff had discontinued burpees altogether, substituting them with running, pull-ups and dips.  However, his elbow was still hurting."  (Pltf. Decl. ¶ 10.)  Plaintiff testified at this deposition that, in August 2009, his workout routine included 300 to 500 push-ups each day, twice a week; a "couple thousand" squats per week; and yoga six days a week, including posture and balance variations putting weight on plaintiff's arms.  (Pltf. Depo. at 36-39.)

9.  Plaintiff's first medical examination at CSP-SAC, for treatment of his left elbow, was on July 3, 2009, by defendant Dr. Duc, the attending physician.  Plaintiff complained of "stiffness, unable to straighten my arm completely, and a hot searing pain . . . [i]in the tip of my elbow and the back of it."  (Pltf. Depo. at 31.)  Dr Duc ordered x-rays.  The July 7, 2009 x-rays were reviewed by Dr. Chopra, who opined in pertinent part (Dkt. No. 1 at 17):

> FINDINGS:  Frontal, lateral, and oblique views of the left elbow were submitted for evaluation. The radial capitellar alignment is normal.  The alignment of the olecranon relative to the trochlea is also normal.  There is spurring along the tip of the olecranon likely related to mild degenerative changes.  [There are no] definite osteochondral bodies. . . .[or] significant elbow joint effusion.

IMPRESSION:  Minor degenerative changes with spurring along the tip of the olecranon.  No definite acute osseous injury identified.  Osseous alignment is maintained.

10.   Dr. Duc advised plaintiff to continue performing only half of his regular workout routine, and to rest his elbow.  Noting plaintiff's reliance on Naproxen, Dr. Duc offered plaintiff a narcotic-based pain medication, which plaintiff refused because he was "not interested in masking pain with narcotics."  (Pltf. Depo. at 27-28.)

11.   Dr. Duc ordered a brace for plaintiff's left elbow, but plaintiff did not receive it for approximately six months, in late 2009 or early 2010.  Plaintiff testified that he wears the soft neoprene brace during his workouts; it does not relieve his pain, but keeps his elbow warm, and helps "the joint moves a little more freely."  (Pltf. Depo. at 54.)

12.   On August 21, 2009, plaintiff was seen by his CSP-SAC primary care physician, defendant Dr. Wedell, who informed plaintiff that his x-rays revealed degenerative bone spurs in his left elbow consistent with plaintiff's arthritis and the aging process.  Dr. Wedell recommended that plaintiff continue with his partial workout routine, and incorporate stretching, which the physician acknowledged was met by plaintiff's addition of yoga six days a week.

13.   Pursuant to the complaint, plaintiff alleges that Dr. Wedell denied plaintiff's request for referral to an orthopedist for treatment of plaintiff's elbow.[5]  Plaintiff states that he suggested to Dr. Wedell that the bone spurs might be "removed by a relatively simple surgical procedure that would alleviate the pain and suffering."  (Cmplt. at ¶ 18.)  Plaintiff alleges, however, that Dr. Wedell refused plaintiff's referral request, and informed plaintiff that "he could do nothing for the plaintiff and that the pain and

_____

[5]   However, plaintiff also testified at his deposition that Dr. Wedell told him, in July 2009, that he would refer plaintiff to an orthopedic specialist, but that such referral would need to be approved by an oversight committee; however, no referral was made.  (See Pltf. Depo. at 41-42.)

1    inflamation (sic), along with the bone spurs, were a fact of life, indicating that the

2    plaintiff was just getting old." (Id. at ¶ 17.)

3  14.  Plaintiff further alleges that, on August 21, 2009, he informed Dr. Wedell that plaintiff

4    "was also experiencing similar pain in his left ankle, and the plaintiff requested x-rays of

5    his left ankle." (Id. at ¶ 21.)  Plaintiff avers that Dr. Wedell offered plaintiff an ankle

6    brace and stated that "that was all he was able to do for the plaintiff." (Id. at ¶ 22.)

7    However, Dr. Wedell also offered plaintiff a prescription for Tramadol, a narcotic pain

8    reliever, which plaintiff declined because he wasn't "interested in masking the pain with

9    narcotics." (Pltf. Depo. at 38-39.)

10  15.  On August 31, 2009, plaintiff filed an administrative grievance (also known as an

11    "inmate appeal" or CDC Form 602 ("602")), pursuant to which he sought referral to an

12    orthopedic specialist for treatment of his left elbow and left ankle.  (Log No. SAC-10-09-

13    11953.) (Dkt. No. 1 at 21-23.)  Plaintiff stated therein that he was told by his doctor on

14    August 21, 2009, that x-rays revealed bone spurs on plaintiff's left elbow, but "nothing

15    could be done[,] that it was a product of old age." (Dkt. No. 1 at 21.)  Plaintiff stated that

16    he was experiencing "extreme pain and inflamation from these spurs." (Id.)  Plaintiff

17    further stated that he was experiencing "similar pain and grinding" in his left ankle, but

18    had been denied x-rays and offered only an ankle brace.  (Id.)  Plaintiff requested that he

19    "get left ankle x-rayed to determine the real problem.  Also be referred to orthopedic

20    doctor for recomendation (sic) of surgery or physical therapist." (Id.)

21  16.  On September 18, 2009, Dr. Wedell interviewed plaintiff pursuant to the First Level

22    Review of plaintiff's grievance.  Dr. Wedell "partially granted" the grievance based on

23    granting plaintiff's request to obtain an x-ray of his left ankle; however, plaintiff's request

24    for an orthopedic referral was denied on the ground that the request did not meet referral

25    criteria.  (Dkt. No. 1 at 24; see also id. at 22, 32.)

26  17.  On October 20, 2009, plaintiff's grievance was, for the same reasons, "partially granted"

at the Second Level Review, by defendant A. Deems, CSP-SAC Chief Executive Officer, based in part on a medical record review by Dr. Duc, with a notation that the results of plaintiff's left ankle x-ray would determine whether an orthopedic referral would be made.  (Id. at 26-28.)

18.  On October 15, 2009, plaintiff obtained an x-ray for his left ankle.  The results were reviewed by Dr. Chopra, who opined in pertinent part (Dkt. No. 1 at 34):

> FINDINGS:  Frontal, lateral, and oblique views of the left ankle demonstrate no evidence of acute osseous injury.  Osseous alignment is maintained.  The regional soft tissues are unremarkable.
>
> IMPRESSION:  No evidence of acute osseous injury.

19.  On February 11, 2010, plaintiff's grievance was "partially granted" at the Director's Level Review, in a decision rendered by defendant T. Kimura-Yip, Deputy Director, California Prison Health Care Services.  Dr. Kimura-Yip noted that an x-ray had been taken of plaintiff's left ankle on October 15, 2009, but that the results had not been addressed by plaintiff's primary care provider pursuant to plaintiff's November 6, 2009 medical appointment.  Dr. Kimura-Yip directed CSP-SAC health care staff to assess plaintiff's treatment plans and status relative to his left ankle and determine whether a speciality referral was medically necessary.  (Id. at 29-30.)

20.  In 2010, Dr. Wedell prescribed a thirty-day trial of Tylenol 3 with Codeine to treat plaintiff's left elbow pain, but plaintiff discontinued taking the medication after four days due to nausea without pain relief.  (Pltf. Depo. at 51-53.)  Dr. Wedell also offered plaintiff a prescription for Methadone, but plaintiff declined.  (Id. at 52.)

21.  In April 2010, plaintiff wrote a letter to the Prison Law Office, seeking advice on how to proceed in obtaining further medical care for his elbow and ankle.  (Pltf. Depo. at 57-58.) In a memorandum, dated April 26, 2010, addressed to "Kyle Lewis, Deputy Attorney General/CDCR Health Care Services," Prison Law Office staff explained plaintiff's

concerns,[6] and requested a response to the following matters (Dkt. No. 1 at 38-39):

> 1.  Please explain why the orthopedic consult for Mr. Sylvester's ankle was denied.
>
> 2.  Please explain the current diagnosis and treatment plan for Mr. Sylvester's elbow.

22.   Thereafter, in a letter dated May 27, 2010, the Prison Law Office (per Tinbete Ermyas, Litigation Assistant to Kelly Knapp, Prison Law Office Staff Attorney (Dkt. No. 42 at 108)) informed plaintiff that Dr. Sahota had provided the following information in a telephone conference held May 20, 2010 (Dkt. No. 1 at 41):

> Dr. Sahota said that you met with the primary care provider (PCP) on 4/1/2010 and reviewed your October 2009 X-ray results, which were normal.  She stated that your current treatment plan consists of stretching and naproxen, and that no referrals to an orthopedist have been made.
>
> Dr. Sahota also reported that you were seen by an orthopedist regarding your elbow on 8/21/2009.  She stated that your PCP does not believe that an elbow or knee brace are medically indicated because your joints do not need support.  Dr. Sahota reported that your PCP recommended you perform stretching exercises.

---

[6]  As set forth in the April 26, 2010 Prison Law Office Memorandum, plaintiff's concerns are identified as follows (Dkt. No. 1 at 38):

> In a letter received on 4/19/10, Mr. Sylvester reports that a referral to an orthopedic specialist for bone spurs in his ankle was denied. Mr. Sylvester received a Director's Level Response (institution log number SAC-10-09-11953) dated 2/11/10 that states SAC health care staff should provide evidence that he was evaluated by a PCP [primary care physician]; that his status and treatment plan for the left ankle were documented; and to determine if a speciality referral to address the problem was medically necessary.  Mr. Sylvester states that on 5/1/10 he was seen by a PCP who again referred him to the orthopedist, but that the referral was denied once again.
>
> In his original 602 appeal, Mr. Sylvester also reports of pain in his elbow due to bone spurs.  None of the appeal responses Mr. Sylvester received address the concerns regarding his elbow.  It is unclear what treatment, if any, Mr. Sylvester has received for his elbow.

14

. . . If you have specific information or documents showing that the information told to us by prison officials is not correct, please contact us.  Unless there is such information, we cannot take further action regarding your particular medical care concern, and we may not be able to take further action in any event, depending on ths nature of your medical concern. . . .

23.  Plaintiff contends that Dr. Sahota "provided the Prison Law Office . . . with a false statement in regard to the plaintiff seeing a specialist. . . ." (Cmplt. at ¶ 48.)  However, pursuant to his deposition, plaintiff conceded that, while the challenged statement was incorrect, he didn't "know for a fact" that Dr. Sahota provided the false information. (Pltf. Depo. at 62.)  Asked if he "believe[d] that the information from Dr. Sahota prevented the prison law office from intervening in [his] matter[,]" plaintiff testified, "I don't know."  (Id.)

24.  At his December 21, 2011 deposition, plaintiff testified that Dr. Dhillon is his current primary care physician at CSP-SAC, commencing in the summer of 2011.  Plaintiff stated that he had not discussed his left elbow complaints with Dr. Dhillon, or requested an orthopedic referral, because plaintiff's lawsuit is pending and plaintiff thought further pursuit of the matter may be inappropriate.  (Pltf. Depo. at 50, 56.)

25.  Plaintiff concedes that defendants Duc and Wedell are licensed medical doctors, but contends that neither are "specialists."

26.  Plaintiff concedes that he never met nor spoke with defendants Sahota, Deems or Kimura-Yip, but insists that this is irrelevant because he is suing defendants Deems and Kimura-Yip in their "individual and official capacit[ies] . . . for failing to remedy unlawful conditions and . . . carry out [their] responsibilities to provide adequate care" (see Plaintiff's Statement of Disputed Facts (Dkt. No. 43 at ¶¶ 24, 26)), and because he is suing defendant Sahota for providing allegedly false information to the Prison Law Office (Dkt. No. 42 at 19, ¶ 37; Pltf. Depo. at 57).

27.  Plaintiff testified, in December 2011, that his principal complaint is the failure of prison

15

1    officials to refer plaintiff to a specialist for his left elbow.  (Pltf. Depo. at 56.)  Plaintiff

2    testified that the problems with his ankle have been resolved.  (Id. at 58.)   Plaintiff

3    testified that his elbow pain was "about the same."  (Id. at 50.)  Plaintiff stated that he can

4    generally straighten his elbow "all the way, but it really hurts;" however, for several hours

5    after his workouts, plaintiff's elbow feels "constricted" and will not straighten all the

6    way.  (Id. at 55.)

7    28.    Pursuant to his complaint, plaintiff seeks declarative and injunctive relief ("an injunction

8          ordering defendants to immediately arrange for the plaintiff to be examined by a qualified

9          physician [inferentially, an orthopedic specialist, for treatment of plaintiff's left elbow],

10         and to carry out without delay the treatment directed by such medical practitioner"), as

11         well as compensatory damages of $10,000, and punitive damages of $5000, against each

12         defendant.  (Cmplt. ¶ ¶ 50-57.)

13   III.  Discussion

14         A.  Eighth Amendment Deliberate Indifference Claim

15              Defendants move for summary judgment on plaintiff's Eighth Amendment claim

16   against all defendants, premised on defendants' alleged deliberate indifference to plaintiff's

17   serious medical needs.  Defendants contend that plaintiff has failed to demonstrate that he had a

18   "serious medical condition," or that the treatment he received was constitutionally inadequate.

19   Defendants assert that plaintiff's challenge to defendants' failure to refer plaintiff to an

20   orthopedic specialist amount to no more than plaintiff's difference of opinion with his medical

21   providers.

22         1.  Legal Standards

23              In order to prevail on an Eighth Amendment claim challenging medical care, a

24   prisoner must demonstrate "acts or omissions sufficiently harmful to evidence deliberate

25   indifference to [his] serious medical needs."  Estelle v. Gamble, 429 U.S. 97, 106 (1976).

26   Plaintiff must show that his medical needs were objectively serious, and that defendants

16

1  responded, or failed to respond, to those needs with a deliberately indifferent state of mind.

2  Wilson v. Seiter, 501 U.S. 294, 299 (1991); Hudson v. McMillian, 503 U.S. 1, 4 (1992);

3  McKinney v. Anderson, 959 F.2d 853 (9th Cir. 1992) (on remand from Supreme Court).

4         The Ninth Circuit has summarized the factors to be considered when determining

5  whether a medical condition is a "serious medical need" within the meaning of the Eighth

6  Amendment:

7         A "serious" medical need exists if the failure to treat a prisoner's
       condition could result in further significant injury or the
8       "unnecessary and wanton infliction of pain."  Gamble, 429 U.S. at
       104. . . . The existence of an injury that a reasonable doctor or
9       patient would find important and worthy of comment or treatment;
       the presence of a medical condition that significantly affects an
10      individual's daily activities; or the existence of chronic and
       substantial pain are examples of indications that a prisoner has a
11      "serious" need for medical treatment.  See e.g. Wood v.
       Housewright, 900 F.2d 1332, 1337-41 (9th Cir. 1990) (citing
12      cases); Hunt v. Dental Dept., 865 F.2d 198, 200-01 (9th Cir. 1989).

13 McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992), overruled in part on other grounds,

14 WMX Technologies v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc).

15        If a prisoner establishes the existence of a serious medical need, he must then

16 show that prison officials responded to the serious medical need with deliberate indifference.

17 Farmer v. Brennan, 511 U.S. 825, 834 (1994).  In general, deliberate indifference may be shown

18 when prison officials deny, delay, or intentionally interfere with medical treatment, or by the

19 nature of treatment provided.  Hutchinson v. United States, 838 F.2d 390, 393-94 (9th Cir. 1988).

20 Before it can be said that a prisoner's civil rights have been abridged with regard to medical care,

21 however, "the indifference to his medical needs must be substantial.  Mere 'indifference,'

22 'negligence,' or 'medical malpractice' will not support this cause of action."  Broughton v. Cutter

23 Laboratories, 622 F.2d 458, 460 (9th Cir. 1980) (citing Estelle, 429 U.S. at 105-06).  Deliberate

24 indifference is "a state of mind more blameworthy than negligence" and "requires 'more than

25 ordinary lack of due care for the prisoner's interests or safety.'"  Farmer, 511 U.S. at 835

26 (quoting Whitley v. Albers, 475 U.S. 312, 319 (1986)).  Even civil recklessness (failure to act in

17

1   the face of an unjustifiably high risk of harm which is so obvious that it should be known) is

2   insufficient.  Id. at 836-37.  Similarly, it is not sufficient to establish that a reasonable person

3   would have known of the risk, or that a defendant should have known of the risk.  Id. at 842.  It is

4   nothing less than recklessness in the criminal sense that is required, that is, disregard of a risk of

5   harm of which the actor is actually aware.  Farmer, 511 U.S. at 838-42.  "[T]he official must both

6   be aware of facts from which the inference could be drawn that a substantial risk of serious harm

7   exists, and he must also draw the inference."  Id. at 837.  Thus, a defendant is liable if he knows

8   that plaintiff faces "a substantial risk of serious harm and disregards that risk by failing to take

9   reasonable measures to abate it."  Id. at 847.  "[I]t is enough that the official acted or failed to act

10  despite his knowledge of a substantial risk of serious harm."  Id. at 842.  If the risk was obvious,

11  the trier of fact may infer that a defendant knew of the risk.  Id. at 840-42.  However, obviousness

12  per se will not impart knowledge as a matter of law.

13          Mere delay in medical treatment, without more, is insufficient to state a claim of

14  deliberate medical indifference.  Shapley v. Nevada Bd. of State Prison Com'rs, 766 F.2d 404,

15  408 (9th Cir. 1985).  An alleged delay in medical treatment, to be actionable, must be harmful to

16  plaintiff, although there is no requirement that the delay cause "substantial" harm.  McGuckin,

17  974 F.2d at 1060, citing Wood v. Housewright, 900 F.2d 1332, 1339-40 (9th Cir. 1990), and

18  Hudson, 503 U.S. at 4-6.  A finding that an inmate was seriously harmed by defendant's action or

19  inaction provides support for a claim of deliberate indifference, but does not end the inquiry.

20  McGuckin, 974 F.2d at 1060.  In general, "the more serious the medical needs of the prisoner,

21  and the more unwarranted the defendant's actions in light of those needs, the more likely it is that

22  a plaintiff has established deliberate indifference on the part of the defendant."  Id. at  1061.

23          Prisoners do not have a constitutional right to outside medical referrals upon

24  request.  See Roberts v. Spalding, 783 F.2d 867, 870 (9th Cir. 1986) ("A prison inmate has no

25  independent constitutional right to outside medical care additional and supplemental to the

26  medical care provided by the prison staff within the institution.") (citations omitted), cert. denied,

479 U.S. 930 (1986).  The refusal or delay of a specialist referral may constitute deliberate indifference only if the omission caused plaintiff harm.  McGuckin, 974 F.2d at 1060; Wood, 900 F.2d at 1335; Shapley v. Nevada Bd. of State Prison Com'rs., 766 F.2d 404, 407 (9th Cir. 1985) (per curiam).

Additionally, a difference of opinion between a prisoner and his physician regarding the prisoner's most appropriate medical treatment is insufficient, as a matter of law, to constitute deliberate indifference.  "[T]o prevail on a claim involving choices between alternative courses of treatment, a prisoner must show that the chosen course of treatment 'was medically unacceptable under the circumstances,' and was chosen 'in conscious disregard of an excessive risk to plaintiff's health."  Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir. 2004), quoting Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996) (citation omitted) (internal brackets omitted); Franklin v. State of Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981) ("A difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a § 1983 claim."); see also Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989) (nor does difference of opinion among medical providers constitute deliberate indifference).

Superimposed on these Eighth Amendment standards is the fact that in cases involving complex medical issues where, as here, plaintiff contests the type of treatment he received, or lack thereof, expert opinion will almost always be necessary to establish deliberate indifference.  Hutchinson, 838 F.2d at 392-93.  Mere differences of opinion concerning the appropriate treatment cannot be the basis of an Eighth Amendment violation.  Jackson, 90 F.3d at 332; Franklin, 662 F.2d at 1344.  Although there may be subsidiary issues of fact in dispute, unless plaintiff can provide expert evidence that the treatment he received equated with deliberate indifference, thereby creating a material issue of fact, summary judgment should be entered for the defendant.  The dispositive question on a summary judgment motion is ultimately not the most appropriate course of treatment for plaintiff, but whether the failure to provide a particular treatment was, in essence, criminally reckless.  In order to defeat defendants' motion

for summary judgment, plaintiff must "produce at least some significant probative evidence

tending to [show]," T.W. Elec. Serv., 809 F.2d at 630, that defendants' actions, or failures to act,

were "in conscious disregard of an excessive risk to plaintiff's health," Jackson, 90 F.3d at 332

(citing Farmer, 511 U.S. at 837).

       2. Analysis

          The parties initially dispute whether plaintiff's left elbow condition is a "serious

medical need" within the meaning of the Eighth Amendment.  Plaintiff asserts that his medical

condition, which he describes as "bone spurs and degenerative bone disease in his left elbow"

(also diagnosed as tendonitis), is "chronic, causes a hot searing pain, swelling and the inability to

straighten out his left arm."  (Oppo. at 15, 17.)

          The court finds that plaintiff's left elbow condition is a "serious medical need."

The condition is supported by objective x-ray evidence of "spurring along the tip of the olecranon

likely related to mild degenerative changes" (Dkt. No. 1 at 17), it causes plaintiff pain and

adversely impacts his daily activities, and was found worthy of diagnosis and treatment by

plaintiff's treating physicians.  See McGuckin, supra, 974 F.2d at 1059.  Each of plaintiff's

treating physicians acknowledged that plaintiff's elbow condition reasonably caused him pain

and related symptoms; each physician instructed plaintiff to reduce his exercise routine, and

continued to fill plaintiff's prescription for Naproxen; each physician offered plaintiff narcotic

pain medication; and one physician provided plaintiff with an elbow brace.  Plaintiff alleges that

he continues to experience pain and other adverse symptoms despite complying with most of the

recommendations of his treating physicians, specifically, modifying his daily activities, wearing

his elbow brace when exercising, and continuing to take 1000 milligrams of Naproxen daily.  For

these several reasons, the court finds that plaintiff's left elbow condition is a "serious medical

need" within the meaning of the Eighth Amendment.

          The next question is whether plaintiff has demonstrated the existence of a material

factual dispute sufficient to overcome defendants' motion for summary judgment on plaintiff's

1   claim that defendants were deliberately indifferent to his serious elbow condition by refusing to

2   refer plaintiff to an orthopedic specialist.[7]  For the following reasons, the court finds that plaintiff

3   has failed to meet his burden.

4              Plaintiff has failed to present any evidence that he was harmed by the absence of

5   the referral.  Plaintiff contends that, pursuant to such referral, he may have obtained surgery

6   and/or physical therapy, and that, as a result of defendants' alleged inaction, plaintiff's elbow

7   condition has "deteriorate[d] to the point where now he has los[t] full range of motion in his left

8   elbow" (Oppo. at 17; Pltf. Decl. at 17, ¶ 26).  As noted by defendants, plaintiff's allegation of

9   decreased range of motion is unsupported by any evidence of record.  Moreover, and

10   significantly, plaintiff testified at his deposition that he had not discussed his left elbow

11   complaints with his current primary care physician, Dr. Dhillon, or requested from Dr. Dhillon an

12   orthopedic referral.  (Pltf. Depo. at 50, 56.)  While plaintiff testified that he chose not to discuss

13   these matters with Dr. Dhillon due to the pendency of the instant action, the omission is

14   significant, supporting a reasonable inference that plaintiff's pain and other symptoms are not so

15   substantial as to require immediate medical attention or intervention.  This inference is also

16   supported by plaintiff's December 2011 deposition testimony:  in response to the question

17   whether his elbow pain had, over time, "gotten worse, lessened, or is it about the same," plaintiff

18   testified that the pain remained "about the same."  (Pltf. Depo. at 50.)  While plaintiff also

19   testified that his elbow felt "constricted" and would not straighten out for several hours after

20   exercising (id. at 55), plaintiff continued to perform strenuous exercises, including weight-

21   bearing exercises involving his elbow.  Additionally, while plaintiff avers that he told Dr. Wedell

22   he could not tolerate narcotic medication due to "nausea, constipation and dehydration," and

23   because narcotics did not relieve plaintiff's pain (see Pltf. Decl. at ¶ 17), the record supports

24   plaintiff's complaints only of nausea during a four-day trial of Tylenol with Codeine.  Plaintiff

25

26          [7]  While plaintiff also claims that he had to wait several months for his elbow brace, he
does not rest his deliberate indifference claim on this allegation.  (See Pltf. Depo. at 56.)

1   testified that he refused to try the other narcotic pain medications offered by his physicians

2   because he didn't want to "mask" his pain.  (Pltf. Depo. at 27-28, 38-39.)  However, "[f]ailure to

3   comply with medical instructions is another factor for us to consider in evaluating deliberate

4   indifference."  Gobert v. Caldwell, 463 F.3d 339, 347 n.25 (5th Cir. 2006) (citation omitted).

5           Plaintiff also failed to present evidence that any defendant was aware that failure

6   to refer plaintiff to an orthopedic specialist may create an excessive risk of harm that plaintiff's

7   elbow condition would worsen and, despite this awareness, deliberately chose not to make the

8   referral.  Plaintiff has presented no evidence in support of his position that his elbow condition is

9   best treated by an orthopedist.  However, even assuming the reasonableness of this position,

10  plaintiff has presented no evidence upon which to reasonably infer that plaintiff sustained harm

11  as a result of defendants' alleged inaction.  Nor, therefore, is there any basis for finding that

12  defendants' failure to refer plaintiff to an orthopedic specialist rested on a conscious decision to

13  deny plaintiff appropriate medical treatment and thereby disregarding a substantial risk of harm

14  to plaintiff's elbow.  Plaintiff's numerous allegations that Dr. Wedell was dismissive, and his

15  comments degrading (e.g. telling plaintiff that he was "just getting old"), do not alter this

16  assessment.

17          In sum, plaintiff's deliberate indifference claim is premised on little more than

18  plaintiff's difference of opinion with his treating physicians, and the medical personnel who

19  subsequently reviewed plaintiff's administrative grievance.  Such disagreements do not support a

20  cause of action under Section 1983.  A difference of opinion between a prisoner and a physician

21  concerning the prisoner's most appropriate course of treatment does not constitute deliberate

22  indifference to serious medical needs.  See Toguchi, 391 F.3d at 1058; Jackson, 90 F.3d at 332;

23  Franklin, 662 F.2d at 1344; see also Sanchez, 891 F.2d at 242 (nor does a difference of opinion

24  among physicians constitute deliberate indifference).  "Where a prisoner has received some

25  medical attention and the dispute is over the adequacy of the treatment, federal courts are

26  generally reluctant to second guess medical judgments and to constitutionalize claims which

1   sound in state tort law." Westlake v. Lucas, 537 F.2d 857, 860 n.5 (6th Cir. 1976) (citations

2   omitted).  To the extent plaintiff is alleging that his medical providers were dismissive, negligent,

3   or committed malpractice, such allegations do not support a cause of action under the Eighth

4   Amendment.

5           Accordingly, viewing the evidence in the light most favorable to plaintiff and

6   drawing any necessary inferences in his favor, the court finds that a reasonable jury could not

7   find that defendants were deliberately indifferent to plaintiff's medical needs.  The record reflects

8   that plaintiff received constitutionally adequate medical treatment in accordance with the

9   professional opinions and judgments of his treating physicians and other prison medical

10  personnel.  This finding applies to each of the named defendants, for the following reasons.

11          3.  As Applied to Each Defendant

12          Plaintiff challenges, as deliberately indifferent, the direct medical services and

13  assessments of defendants Duc and Wedell, and the medical assessments of defendants Deems

14  and Kimura-Yip, pursuant to their review of plaintiff's administrative grievance challenging the

15  decisions of defendants Duc and Wedell.[8]  Because the medical care provided plaintiff by

16  defendants Duc and Wedell was not deliberately indifferent, neither was the approval of this

17  treatment by medical administrators Deems and Kimura-Yip.  Cf. e.g. Sevilla v. Terhune, 2009

18  _____

19          [8] As earlier noted, defendant Wedell interviewed plaintiff at the First Level Review of his
    grievance, which he "partially granted" pursuant to granting plaintiff's request to obtain an x-ray
20  of his left ankle; plaintiff's request for an orthopedic referral was denied on the ground that
    plaintiff had been "told that nothing could be done.  It was explained that bone spurs are a
21  product of old age. . . ." (Cmplt. at 24.)  Plaintiff's grievance was, for the same reasons,
    "partially granted" at the Second Level Review, by defendant Deems, CSP-SAC Chief Executive
22  Officer, pursuant in part to a medical review by defendant Duc, with the notation that the results
    of plaintiff's left ankle x-ray would determine whether an orthopedic referral would be made.
23  (Id. at 26-28.)   At the Director's Level Review, plaintiff's grievance was again "partially
    granted" in a decision rendered by defendant T. Kimura-Yip, Deputy Director, California Prison
24  Health Care Services.  It was noted that an x-ray had been taken of plaintiff's left ankle on
    October 15, 2009, but that the results had not been addressed by plaintiff's primary care provider
25  at plaintiff's November 6, 2009 appointment.  CSP-SAC health care staff were directed to assess
    plaintiff's treatment plans and status relative to his left ankle and determine whether a speciality
26  referral was medically necessary.  (Id. at 29-30.)

WL 1211393, *6 (E.D. Cal. 2009) ("If Plaintiff states a cognizable claim against a defendant for deliberate indifference to his serious medical needs, he will likely also be able to state a cognizable claim against defendants with medical training if they reviewed and ruled against Plaintiff in his medical grievances/appeals on that same issue.").  Moreover, the apparent failure of plaintiff's current primary care physician to timely follow-up on plaintiff's ankle x-ray is not relevant to plaintiff's challenges to his elbow care or, therefore, the issues in this case.

Similarly, as this court found on screening the complaint, plaintiff does not state a cognizable due process claim premised on the fact that defendants' administrative rulings were not fully favorable.  A defendant's participation in the administrative review or denial of a plaintiff's inmate appeal does not give rise to a cause of action premised on due process rights. See e.g. Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988), cert. denied, 488 U.S. 898 (1988) (no constitutional right to an inmate appeal or grievance process).  "[P]articipation in the prison grievance process does not give rise to a cause of action."  Lewis v. Ollison, 571 F. Supp. 2d 1162, 1170 (C.D. Cal. 2008) (dismissing corrections personnel who participated in the review and denial of plaintiff's inmate appeals); Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993) (prison official's involvement in an administrative appeals process cannot serve as a basis for liability in a Section1983 action); Azeez v. DeRobertis, 568 F. Supp. 8, 10 (N.D. Ill. 1982) ("[A prison] grievance procedure is a procedural right only, it does not confer any substantive right upon the inmates.  Hence, it does not give rise to a protected liberty interest requiring the procedural protections envisioned by the Fourteenth Amendment.").

Pursuant to the instant motion, the parties also address plaintiff's contention that defendants Wedell and Deems (and hence Duc), violated Section 3084.7, title 15, California Code of Regulations, pursuant to their participation in the administrative review process.  Section 3084.7 provides in pertinent part:  "Appeal responses shall not be reviewed and approved by a staff person who:  (A) Participated in the event or decision being appealed. . . ."  15 C.C.R. §

1   3084.7(d)(1)(A).[9]  Plaintiff contends that defendant Wedell, as plaintiff's treating physician,

2   violated this provision by ruling on plaintiff's grievance at the First Level Review; and that

3   defendant Deems violated this rule at the Second Level Review by relying on the opinion of

4   another of plaintiff's treating physicians, Dr. Duc.  However, this regulation authorizes such

5   participation when deemed "necessary."[10]  More importantly, violation of a state regulation does

6   not give rise to a federally protected due process interest, and the alleged failure of defendants to

7   abide by Section 3084.7 lacks federal constitutional significance.  See e.g. Moreland v. Las

8   Vegas Metro. Police Dep't, 159 F.3d 365, 371 (9th Cir. 1998) ("state law violations do not, on

9   their own, give rise to liability under §1983") (citation omitted).  Moreover, the provisions of

10  Section 3084.7 have been routinely rejected by courts in this district.  See e.g. Graham v.

11  Baughman, 2010 WL 1853909, *10 (E.D. Cal. 2010) ("There is simply no general constitutional

12  right to an adequate or fair grievance system upon which to premise such a claim in federal

13  court."); El-Shaddai v. Clark, 2010 WL 1494763, *3 (E.D. Cal. 2010) ("[S]ection 1983 provides

14  no avenue for redress as the violation of state law does not form the basis for a federal

15  constitutional claim.  Further, Plaintiff may not proceed on a claim for violation of the Due

16  Process Clause because there is no federally protected interest at stake with respect to the prison

17  grievance system.") (citations omitted.); Gray v. Woodford, 2007 WL 2790588, *5 (S.D. Cal.

18  2007) ("Plaintiff has failed to plead facts demonstrating that Defendants deprived him of a

19  protected liberty interest by allegedly conducting an improper review of his grievances. . . .

20  Accordingly, Plaintiff's allegations regarding the handling of his grievance fail to state a claim

21  under the Due Process Clause.")  For these reasons, the court finds that the alleged conflicts of

22

23          [9]  Plaintiff inaccurately references these provisions as 15 C.C.R. § 3084.5(e).

24          [10]  15 C.C.R. § 3084.7(d)(1)(A) further provides:  "This does not preclude the involvement
      of staff who may have participated in the event or decision being appealed, so long as their
25    involvement with the appeal response is necessary in order to determine the facts or to provide
      administrative remedy, and the staff person is not the reviewing authority and/or their
26    involvement in the process will not compromise the integrity or outcome of the process."

1   interest asserted by plaintiff pursuant to the review of his administrative grievance by defendants

2   Wedell and Deems (and Duc), allegedly in violation of Section 3084.7, fail to state a cognizable

3   federal claim.

4           The alleged role of remaining defendant Dr. Sahota is less clear.  It is undisputed

5   that the statement attributed to Dr. Sahota, as set forth in the Prison Law Office's May 27, 2010

6   letter to plaintiff, that plaintiff was seen by an orthopedist on August 21, 2009, was incorrect.

7   Plaintiff contends that it is reasonable to infer that defendant Dr. Sahota provided this false

8   information to the Prison Law Office, and on this basis includes Dr. Sahota as a defendant in

9   plaintiff's Eighth Amendment claim.  (Cmplt. at ¶ 48.)  However, pursuant to his deposition,

10  plaintiff conceded that, while the challenged statement was incorrect, he didn't "know for a fact"

11  that Dr. Sahota provided false information.  (Pltf. Depo. at 62.)  Asked if he "believe[d] that the

12  information from Dr. Sahota prevented the prison law office from intervening in [his] matter[,]"

13  plaintiff testified, "I don't know."  (Id.)

14          Review of the Prison Law Office's May 27, 2010 letter to plaintiff demonstrates

15  that it contains inconsistent information regarding plaintiff's referral to an orthopedist.  The letter

16  reports that Dr. Sahota informed Prison Law Office staff both that plaintiff was "seen by an

17  orthopedist regarding [his] elbow on 8/21/2009," and that "no referrals to an orthopedist have

18  been made." (Dkt. No. 1 at 41.)  The same letter encourages plaintiff to inform the Prison Law

19  Office whether "the information told us by prison officials is not correct." (Id.)  The Office

20  informed plaintiff that "[u]nless there is such information, we cannot take further action

21  regarding you particular medical care concern," although the Office "may not be able to take

22  further action in any event." (Id.)  The record contains no evidence indicating that plaintiff

23  further contacted the Prison Law Office -- plaintiff neither testified nor averred that he did, and

24  the declaration of Prison Law Office Staff Attorney Kelly Knapp indicates that the last

25  communication with plaintiff was the Office's May 27, 2010 letter to plaintiff.

26  ////

1    To proceed on a Section 1983 claim against defendant Sahota, plaintiff must
2    demonstrate that there was an actual connection or link between defendant's alleged actions and
3    the deprivation alleged to have been suffered by plaintiff.  See Monell v. Department of Social
4    Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976).  Construing the evidence in
5    the light most favorable to plaintiff, it is reasonable to infer that defendant Sahota provided
6    inconsistent and incorrect information to Prison Law Office staff.  However, plaintiff has failed
7    to demonstrate a connection between this alleged conduct and his inability to obtain an
8    orthopedic referral.  It appears that plaintiff did not further communicate with the Prison Law
9    Office (or Dr. Sahota), in order to correct the misinformation and promote his referral request;
10   and plaintiff concedes that he never met nor spoke with defendant Sahota.  Moreover, even had
11   the errors in the May 27, 2010 letter been corrected, or if the letter, as originally drafted, had
12   accurately reflected that plaintiff had not been referred to an orthopedic specialist, the failure of
13   plaintiff to subsequently obtain the requested referral would not have demonstrated deliberate
14   indifference, as found by the court.  Thus, even if the conduct of defendant Sahota was the
15   lynchpin in plaintiff's inability to obtain an orthopedic referral, the court finds that such conduct
16   did not violate the Eighth Amendment.

17          For these several reasons, the court finds that no defendant was deliberately
18   indifferent to plaintiff's serious medical needs.  Therefore, the court grants summary judgment
19   for all defendants on plaintiff's Eighth Amendment claim.

20          B.  Qualified Immunity

21          Defendants move, alternatively, for summary judgment on plaintiff's Eighth
22   Amendment claim, based on qualified immunity grounds.  The qualified immunity analysis
23   involves two inquiries:  whether the facts alleged by plaintiff establish a constitutional violation,
24   and whether the right at issue was clearly established at the time.  Saucier v. Katz, 533 U.S. 194,
25   201 (2001).  Because plaintiff has not demonstrated a constitutional violation of his Eighth
26   Amendment rights, the court need not reach defendant's motion for qualified immunity.

1          C.  State Law Medical Negligence Claim

2                 In addition to his federal constitutional claim, plaintiff alleges a state law claim

3     for medical negligence under California law against, inter alia, defendants Wedell, Duc, Deems,

4     and Kimura-Yip.  (Cmplt. at ¶¶ 37, 40, 47; Dkt. No. 1 at 43-4).  Defendants move for summary

5     judgment on plaintiff's state law claim, on the ground that plaintiff failed to timely comply with

6     the requirements of the California Tort Claims Act ("CTCA"), as set forth in California

7     Government Code §§ 810 et seq.

8                 Although the undersigned finds that plaintiff appears to have substantially

9     complied with state filing deadlines,[11] the court declines supplemental jurisdiction over plaintiff's

10    state law claim because it has resolved all federal claims over which this court has original

11    jurisdiction, See 28 U.S.C. § 1367(c)(3) (district court may decline to exercise supplemental

12    jurisdiction over state law claims if it has dismissed all claims over which it has original

13

14          [11]  By order of this court, filed May 14, 2012, the undersigned acknowledged plaintiff's
      submission of exhibits that appeared to demonstrate that plaintiff, on June 11, 2010, timely
15    submitted to prison officials for mailing a claim to the California Victim Compensation and
      Government Claims Board ("VCGCB"), against, inter alia, defendants Wedell, Duc, Deems, and
16    Kimura-Yip for medical negligence, as alleged in this action.  However, due to systemic
      problems in the CSP-SAC mailroom, identified in an April 11, 2012 letter to plaintiff from CSP-
17    SAC Warden Virga, plaintiff's tort claim was not sent to the VCGCB until April 2012.
      Acknowledging this significant delay, this court directed CSP-SAC staff to assist plaintiff in
18    forwarding a copy of the court's order to the VCGCB, with a request, if possible, for expedited
      consideration of plaintiff's claim.  (See Dkt. No. 47.)  On June 4, 2012, plaintiff filed a status
19    report concerning the claim, attaching a copy of the VCGCB's May 23, 2012 letter to plaintiff,
      which noted the Board's receipt of plaintiff's claim on April 16, 2012, and that, "[t]o the extent
20    the VCGCB has jurisdiction over this matter, Board staff recommends your claim be rejected."
      (Dkt. No. 48 at 2.)  Plaintiff was informed that the VCGCB would issue a final decision on his
21    claim at its June 21, 2012 hearing.  (Id.)  Plaintiff has not informed the court of the claim's
      further status.
22          Plaintiff's federal complaint, filed September 3, 2010, alleges that plaintiff filed a claim
      with the VCGCB on June 11, 2010.  (Cmplt. at ¶¶ 37, 40.)  The complaint further avers that,
23    because forty-five days had passed, plaintiff's state tort claim could properly be considered
      denied.  (Id. at ¶ 41.)  Had plaintiff's claim been timely served by CSP-SAC, as reasonably
24    assumed by plaintiff, plaintiff would have been correct.  See Cal. Govt. Code § 912.4(c) (claim
      deemed rejected if Board fails to act within 45 days after its presentation).  As plaintiff asserts in
25    opposition to defendants' motion for summary judgment, it appears that "[p]laintiff performed
      everything within his means and power pursuant to applicable law to present his claims to the
26    Government Claims Board."  (Dkt. No. 41 at 22.)

jurisdiction). Therefore, plaintiff's state law claim is dismissed without prejudice.  Plaintiff is

informed that he may pursue his claim in state court pursuant to the time limitations set forth in

28 U.S.C. § 1367(d).

IV.  Conclusion

       For the foregoing reasons, IT IS HEREBY ORDERED that:

       1.  Defendants' motion for summary judgment (Dkt. No. 27), on plaintiff's Eighth

Amendment claim for deliberate indifference to plaintiff's serious medical needs, is granted.

       2.  The court declines to exercise supplemental jurisdiction over plaintiff's state

law medical negligence claim, which is dismissed without prejudice.

       3.  The Clerk of Court is directed to enter judgment for defendants.

       SO ORDERED.

DATED:  September 11, 2012

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

sylv2380.msj

29